CENTRAL HOSPITAL FOR INSANE *v.* A. A. ADAMS.

*(Nashville.* December Term, 1915.)

1. **LIMITATION OF ACTIONS.** Application. Public corporations.

Local public corporations, such as municipalities, counties, and school districts are amenable to the statute of limitations with regard to property or contract rights which they claim for their own convenience, as corporations, as in such cases they are held not to represent the sovereign, but only themselves and the parties directly or locally interested. (*Post, p.* 431.)

2. **LIMITATION OF ACTIONS.** State institution. Hospital for insane.

A suit against a guardian for compensation for keeping his insane ward, brought by a hospital for the insane, a body politic and corporate created by the State to carry out a public charity, supported by the public revenues and controlled by the State's officers, so that a recovery would go to assist the State, in view of Shannon's Code, Section 2579, waiving the State's immunity from suit so far as it is interested in the corporation and to the extent that it may acquire and hold property and sue and be sued, was not amenable to the statute of limitations. (*Post, pp.* 431-434.)

Cases cited and approved: Memphis v. Looney, 68 Tenn., 130; Brown v. Trustees of Schools, 224 Ill., 184; McClanahan v. Western Lunatic Asylum, 88 Va., 466; Bank of U. S. v. Planters' Bank of Georgia, 9 Wheat., 904; Eastern State Hospital v. Graves, 105 Va., 151; Maia v. Eastern State Hospital, 97 Va., 507.

Case cited and distinguished: Western Lunatic Asylum v. Miller, 29 W. Va., 326.

Code cited and construed: Sec. 2579 (S.).

3. **STATES.    State institution.    Action for negligence.**

A charitable corporation, created by the State itself for governmental purposes, solely owned and maintained by the State, and engaged in the discharge of its public duties, from the performance of which it derives no benefit, is, unless otherwise expressly provided by statute, exempt from liability to a private action for negligence in the discharge of its duties. (*Post, pp.* 434-437.)

Cases cited and approved:    Lyle v. Nat. Home for Disabled Volunteer Soldiers, 170 Fed., 845;    Overholser v. National Home, 68 Ohio St.. 236;    Moody v. State Prison, 128 N. C., 12;    Williamson v. Louisville Industrial School, 95 Ky., 251.

Code cited and construed:    Sec. 2579  (S.).

FROM WILSON

Appeal from the Chancery Court of Wilson County. —J. W. STOUT, Chancellor.

JNO. R. AUST and W. R. CHAMBERS, for appellant.
A. A. ADAMS, for appellee.

MR. JUSTICE FANCHER delivered the opinion of the Court.

This suit was instituted by the Central Hospital for the Insane against A. A. Adams, guardian, to recover compensation for keeping defendant's ward, who is a lunatic, as an inmate of said hospital for the insane. A portion of the account is not within six years prior to the bringing of suit, and the defendant pleads the

statute of limitations on that portion of the account. Complainant takes the position that the hospital for the insane is an agency of the State, and as such no statute of limitations will run against it.

The authorities in the main concur in holding that local public corporations, such as municipalities, counties, and school districts, are amenable to the statute of limitations with regard to property or contract rights which the corporation claims for its own convenience as a corporation. In such cases it is held not to represent the sovereign, but only itself and the parties directly or locally interested.

But in such cases where it represents the whole people, such as the use of streets, squares, parks, etc., which have been dedicated to the public, many authorities hold that the statute of limitations will not apply, and this is the rule in Tennessee. *Memphis* v. *Looney,* 9 Baxt., 130; Dillon on Municipal Corporations, vol. 2, sec. 533.

In an action by school directors of a township having the custody, care, and title of all schools, and schoolhouse sites, to recover in ejectment possession of school property, it was held that the people of the State in general have no interest in common with the inhabitants of a school district, in the schoolhouse site or the proceeds of it. *Brown* v. *Trustees of Schools,* 224 Ill., 184, 79 N. E., 579, 115 Am. St. Rep., 146, 8 Ann. Cas., 96. This case holds as does the court in *Memphis* v. *Looney,* supra, that statutes of limitation do not run against counties and municipalities in matters re-

specting strictly public rights as distinguished from private and local rights.

The same doctrine is announced in 25 Cyc. 1009. The author there goes on further to say:

"Public corporations, such as lunatic asylums or school districts, are, when clothed with capacity to sue and be sued, amenable to the plea of the statute of limitations."

On that subject the text cites the case of *McClanahan* v. *Western Lunatic Asylum,* 88 Va., 466, 13 S. E., 977, and *Western Lunatic Asylum* v. *Miller,* 29 W. Va., 326, 1 S. E. 740, 6 Am. St. Rep., 644. These two cases involve the direct question, and it was held that the asylum, being a corporation, an organized legal entity and personality in law, with power to sue and be sued, plead and be impleaded, was amenable to all legal defenses which pertain to private persons.

In the Virginia case, the court cited *Bank of the United States* v. *Planters' Bank of Georgia,* 9 Wheat., 904, 6 L. Ed., 244, holding that the State of Georgia, by giving the bank the capacity to sue and be sued, stripped itself of its sovereign character so far as respected the transactions of the bank, and waived all the privileges of that character, though the State held an interest in the bank.

In the West Virginia case the law applicable is stated as follows:

"Public corporations, whether they are municipal or mere agencies of the State, are all more or less branches of the government and necessarily clothed

with attributes and incidents of sovereignty, yet when they are clothed with the capacity to sue and be sued, to have a common seal, to take and hold property and transact business, they are governed by the same laws, rules and regulations and subject to the same limitations that natural persons are, except so far as they may be exempted or relieved by positive law.''

*McClanahan* v. *Western Lunatic Asylum,* supra, was overruled in *Eastern State Hospital* v. *Graves,* 105 Va., 151, 52 S. E., 837, 3 L. R. A. (N. S.), 746, 8 Ann. Cas., 701, holding that the hospital, being a mere agency of the State, owned and controlled by it, all charges imposed upon its inmates or their estates for taking care of and maintaining them are for the benefit of the State; and, when collected, go to the support of the hospital as much as the money appropriated out of the public treasury. If not collected, the loss falls wholly upon the State; and, if there is a recovery, it will be for the benefit of the State and the State alone, not for the benefit of the directors, nor for the benefit of any subordinate division of the State, but for the whole people—the State at large.

This decision followed *Maia* v. *Eastern State Hospital,* 97 Va., 507, 34 S. E., 617, 47 L. R. A., 577, holding that the hospital exists for purely governmental purposes, is a public corporation governed and controlled by the State, and acts exclusively as an agency of the State for the protection of society and for the promotion of the best interests of the unfortunate people

134 Tenn. 28

of the commonwealth, of insane and disordered minds; that it has no stockholders, no members even, except directors having no interest in it or its affairs, who are appointed by the governor, by and with the consent of the senate, and are in fact public rather than corporate officials, endued with corporate being for a more convenient administration of the duties imposed upon them by law, and are made liable to fines for any failure to perform their duties.

*Eastern State Hospital* v. *Graves,* supra, was cited approvingly in *State* v. *Moore,* 90 Kan., 756, 136 Pac., 233 (1913), and it was held that the function of maintaining an asylum for the insane is governmental, and the statute does not run against the State with respect to a claim in connection therewith. That was a suit directly in the name of the State for the asylum.

Analogous to the question here is the well-settled rule that a charitable corporation created by the State itself for governmental purposes solely, owned and maintained by the State, and engaged in the discharge of its public duties, from the performance of which it derives no benefit, is, as an agency of the State, unless otherwise expressly provided by statute, exempt from liability to a private action for negligence in the discharge of its duties. *Lyle* v. *National Home for Disabled Volunteer Soldiers* (C. C. Opinion by Judge Sanford), 170 Fed., 845, and cases cited, especially *Overholser* v. *National Home,* 68 Ohio St., 236, 67 N. E., 487, 62 L. R. A., 936, 96 Am. St. Rep., 658; *Moody* v.

*State Prison,* 128 N. C., 12, 38 S. E., 131, 53 L. R. A., 855; *Williamson* v. *Louisville Industrial School,* 95 Ky., 251, 24 S. W., 1065, 23 L. R. A., 200, 44 Am. St. Rep., 243.

There are three hospitals for the insane in this State, the Central Hospital for the Insane, near Nashville, the Eastern Hospital for the Insane, near Knoxville, the Western Hospital for the Insane, near Bolivar, each of which is by statute a body politic and corporate by its respective name as given.

It is provided by section 2579 of Shannon's Code, applying to said hospitals for the insane, as follows:

"Each of said corporations shall have a common seal; and, in its corporate name and capacity, each may acquire property, real and personal, by gift or otherwise, and hold, sell, and convey the same for the uses and purposes of its creation and sue and be sued in the same manner as a natural person."

By this statute the State has waived its immunity from suit so far as it is interested in this corporation, and, to the extent that it may acquire property, real and personal, hold, sell, and convey the same, sue and be sued, in the same manner as a natural person, it exercises functions of a private corporation.

The two cases from Virginia and West Virginia, respectively, above mentioned, do not seem to regard that consideration, brought out so clearly in *Eastern State Hospital* v. *Graves,* to the effect that the recovery on a suit of this character is entirely for the benefit of

the State and goes to the support of the hospital, a public charity, owned and controlled for the benefit of the whole people of the State.

This occurs to us to be the most material consideration in the matter. While the hospital for the insane is a body politic and corporate, created by the State, it is merely a vehicle to carry out the purposes of the State in the maintenance of a public charity, which is for the benefit of the whole people of the State. It is supported by the public revenues.

The recovery in this case will go directly to assist the State in caring for the inmates who are the dependent wards of the State's bounty.

These hospitals for the insane do not serve a mere local purpose. The State, in giving to the hospitals for the insane some of the attributes of a private corporation, did not divest these organizations of their public attributes. The hospitals and all their property are controlled by the officers of the State. This question falls directly within and is governed by the principals stated in *Memphis* v. *Looney,* there discussed as to municipal corporations, that as respects public rights the statutes of limitation do not apply.

We believe the holding in the last Virginia case above mentioned, *Eastern Hospital* v. *Graves,* overruling the former Virginia case, states the true rule, notwithstanding the forceful views expressed in the former case, and also in the West Virginia case which it followed.

Hospital for Insane v. Adams.

The decree of the chancellor sustained the plea of the statute of limitations, but granted relief in other respects. That decree is modified by this court so as to allow a recovery for the whole amount sued for. The cause will be remanded to the chancery court of Wilson county to enforce the recovery.